THE STATE OF OHIO, APPELLEE, *v.* CARPENTER, APPELLANT.

[Cite as *State v. Carpenter* (1993), 68 Ohio St.3d 59.]

(No. 92–1269—Submitted September 15, 1993—Decided December 22, 1993.)

*Michael Miller*, Franklin County Prosecuting Attorney, and *Steven L. Taylor*, Assistant Prosecuting Attorney, for appellee.

*Philip Churchill*, Franklin County Public Defender, and *John W. Keeling*, Assistant Public Defender, for appellant.

FRANCIS E. SWEENEY, SR., J.   The sole issue before this court is: When the state accepts a negotiated plea, and the victim later dies of injuries sustained in the crime, can the defendant later be indicted for murder where the state does not

expressly reserve the right of the state to file additional charges, should the victim later die? For the following reasons, we answer "no" and, thereby, reverse the judgment of the court of appeals.

Plea agreements are an essential and necessary part of the administration of justice. *Santobello v. New York* (1971), 404 U.S. 257, 261, 92 S.Ct. 495, 498, 30 L.Ed.2d 427, 432. "Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons." *Id.* at 261, 92 S.Ct. at 498, 30 L.Ed.2d at 432. "This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances." *Id.* at 262, 92 S.Ct. at 499, 30 L.Ed.2d at 433.

In *State v. Thomas* (1972), 61 N.J. 314, 294 A.2d 57, the New Jersey Supreme Court decided a case closely on point with the present case. In *Thomas,* the defendant knocked a woman to the sidewalk and took off with her purse. The defendant was charged with robbery, assault with intent to rob, and atrocious assault and battery. Pursuant to a plea bargain, the defendant pled guilty to the charge of atrocious assault and battery and he was sentenced accordingly. Thereafter, the victim died. About eight months later the two remaining counts were dismissed, and the state secured an indictment for murder.

The New Jersey Supreme Court directed that the indictment be dismissed and held:

"From an examination of the record * * * we are convinced that the defendant anticipated that by pleading guilty to atrocious assault and battery, and then serving whatever sentence might be imposed, he was terminating the incident and could not thereafter be called upon to account further. We think, under all of the circumstances, that this expectation was entirely reasonable and justified. Furthermore we think it was shared by the prosecutor, at least until he learned that Mrs. Murray had died." 61 N.J. at 323, 294 A.2d at 62.

Several other courts adopting the rationale of *Thomas* have held that if the state wants to reserve its right to file additional charges based upon the contingency of the death of the alleged victim, it must make such a contingency part of the plea agreement. See *State v. Nelson* (1990), 23 Conn.App. 215, 579 A.2d 1104; *State v. Lordon* (1976), 116 N.H. 479, 363 A.2d 201.

In the present case, the state had actual knowledge of the alleged victim's condition at the time of the plea agreement and knew death was possible. Nevertheless, the state accepted a plea in which it agreed to reduce the charge of felonious assault to attempted felonious assault and recommend the imposition of a minimum sentence of two to ten years. By accepting a plea to a lesser included charge, the state obtained a definite prison term for the defendant and avoided the uncertainties of trial. In exchange, the appellant anticipated that by pleading

guilty to attempted felonious assault, and giving up rights which may have resulted in his acquittal, he was terminating the incident and could not be called on to account further on any charges regarding this incident. We think this expectation was entirely reasonable and justified and that the prosecutor was aware of this expectation. Therefore, if the state wanted to reserve its right to bring further charges later, should the victim die, the state should have made such a reservation a part of the record.

Accordingly, we hold that the state cannot indict a defendant for murder after the court has accepted a negotiated guilty plea to a lesser offense and the victim later dies of injuries sustained in the crime, unless the state expressly reserves the right to file additional charges on the record at the time of the defendant's plea.

The judgment of the court of appeals is reversed, the indictment for murder is ordered dismissed and the defendant is discharged.

*Judgment reversed,*
*indictment for murder dismissed*
*and defendant discharged.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS and WRIGHT, JJ., concur.

RESNICK and PFEIFER, JJ., dissent.

PFEIFER, J., dissenting. There is no doubt that the prosecution of the case against Carpenter has been less than perfect. Twenty-two months passed between the victim's death and the time Carpenter was indicted for murder. The prosecutor inexcusably claims that the defendant's case "fell through the cracks." Still, a person was killed in this case, and Carpenter should not go untried for murder simply because he was lucky enough to negotiate a settlement before the victim died of the mortal injuries Carpenter inflicted.

This court has previously refused to accept jurisdiction in this case on Carpenter's claim of double jeopardy. *State v. Carpenter* (1989), 44 Ohio St.3d 709, 542 N.E.2d 347. It is well settled that a defendant may be tried for the murder of his victim even if he had been previously convicted of a lesser related offense prior to the victim's death. "The courts have long held that where a fact necessary to the commission of one offense occurs after the defendant has been convicted of another offense, multiple prosecutions are not barred by the Double Jeopardy Clause." *State v. Thomas* (1980), 61 Ohio St.2d 254, 262, 15 O.O.3d 262, 267, 400 N.E.2d 897, 904.

The same type of reasoning should be applied in the present situation. Where a fact necessary to the commission of one offense has not occurred at the time a plea bargain is made, the plea bargain cannot apply to that offense. A plea

bargain applies to the universe of charges that could be associated with one set of facts. At the time of the plea bargain in this case, murder could not have been included in the universe of possible charges. The victim's death had not yet occurred.

Carpenter was going to be tried for something at the time of the plea bargain—the prosecutor did not need to wait until the death of the victim to try him. Since there were no double-jeopardy implications, Carpenter could have been convicted of attempted murder, felonious assault, or some other crime prior to the victim's death, and again for murder after the victim's death. He would have gone to jail if convicted prior to the victim's death. Prosecutor and defendant weighed the risks associated with possible convictions under the facts as they then existed, and arrived at their plea bargain.

The majority decision clouds the plea bargaining process by adding extraneous factors for consideration. Where do we draw the line? At what point in the victim's struggle for survival is the prosecutor deemed to know that the victim will probably die, and at what point is that knowledge assumed to be wordlessly understood in the plea agreement?

In cases like this defendants are in a position where they can be convicted of some crime prior to the victim's death. We have no reason to believe that the plea bargain applies to any charge but that one. I believe that it is contrary to sound public policy to allow prosecutors and defense counsel to make plea bargains on crimes that have not yet been committed, especially when the bargaining is tied to the victim's chances of survival.

I would thus affirm the judgment of the appellate court.

RESNICK, J., concurs in the foregoing dissenting opinion.