{¶ 27} While I agree with the majority's resolution of Appellant's first assignment of error, I would find that Appellant's plea agreement precludes the filing of felony charges against her. Upon review of the videotape, I have little doubt that Appellant could be charged with a felony offense. The assault on Mr. Scarpino was vicious and savage. However, the evidence presented herein supports a finding that Appellant properly discharged her burden to articulate that her reliance on the prosecutor's statements was reasonable. Accordingly, I would reverse.
 {¶ 28} In overruling Appellant's second assignment of error, the majority relies upon State v. Zima, 102 Ohio St.3d 61,2004-Ohio-1807, and State v. Carpenter (1993),68 Ohio St.3d 59. Neither Zima nor Carpenter, however, compels the result reached by the majority. In Carpenter, the Court held that the State could not pursue murder charges following a negotiated guilty plea to a lesser offense unless the State reserved the right to do so at the time of the plea. Carpenter,
68 Ohio St.3d at syllabus. The Court was not asked to decide whether promises made by a prosecutor that future charges would not be brought were in fact enforceable. Accordingly, Carpenter lends no support to the majority's conclusion.
 {¶ 29} The majority's reliance on Zima is also misplaced. In Zima, the Court recognized that the foundation ofCarpenter was "basically an implied promise on the part of the state not to prosecute the defendant for any further offenses that may arise out of the same incident." Zima at ¶ 11. The Court went on to note:
"Critically, in both Carpenter and Thomas, the defendant's expectation that his guilty plea would terminate the incident was inherently justified because the prosecutor and the court had jurisdiction over all the charges, both actual and potential, and because the negotiated guilty plea included the dismissal of all pending charges. In the absence of these or equivalent circumstances, however, it would be exceedingly difficult to sustain a defendant's belief that no further charges will be brought or prosecuted." Id. at ¶ 12.
The Court continued:
"These qualifying factors are absent in the present case. When Zima entered her plea in municipal court on August 27, 2001, she had already been indicted for aggravated vehicular assault. Neither the municipal court nor the city prosecutor had the authority to dismiss those pending felony charges. Although Zima may not have been aware of the indictment at the time of her plea, we agree with the observation of one of the judges on the appellate panel that a defendant should be aware that a plea taken before a municipal judge with limited criminal jurisdiction might not dispose of the matter fully. Therefore, Zima cannot simply rely on an implied representation that no further charges would be brought but must articulate the circumstances showing why her belief was reasonable in this case, which she has failed to do." (Internal quotations and citations omitted.) Id. at ¶ 14.
 {¶ 30} I begin by noting that a proper application of Zima
actually supports Appellant's position. In the instant matter, Appellant pled guilty to the count of simple assault and the remaining charges pending against her were dismissed pursuant to her plea agreement. Unlike the defendant in Zima, Appellant did not have felony charges pending against her at the time she entered her plea to the misdemeanor charge. Accordingly, her guilty plea did dismiss all the pending charges against her. The majority, however, finds that since the municipal court did not have jurisdiction over potential felony charges, Appellant's claim must fail. I disagree.
"The court in Zima focused on the reasonableness of the defendant's expectation in cases where all of the facts underlying the greater offense [are] known at the time of the plea. The court indicated that a defendant should be aware that a plea taken before a municipal judge with limited criminal jurisdiction might not dispose of the matter fully. Nevertheless, this does not mean there can never be circumstances where a plea negotiation in a municipal court cannot be binding upon a court of common pleas. Indeed, the judicial power to try an accused in Municipal Court springs from the same organic law that created the state court with general jurisdiction to try an accused. Thus, the state and the city are parts of a single sovereignty." (Internal citations and quotations omitted.) State v.McDonough, 8th Dist. No. 84766, 2005-Ohio-1315, at ¶ 9, citingState v. Best (1975), 42 Ohio St.2d 530, 533.
This matter is distinguishable from a situation where a defendant pleads guilty to a misdemeanor charge, e.g., assault, and later it is discovered that the victim's injuries are more severe or the victim dies. Such was not the case here. All the facts surrounding the charges against Appellant and her co-defendant were known to the State at the time Appellant entered her plea. Thus, the fact that the municipal court lacked jurisdiction to try felony charges against Appellant is not dispositive.
 {¶ 31} In the instant matter, the majority finds that Appellant's reliance on the prosecutor's statements was not reasonable. However, this case does not present in the same manner as Zima or Carpenter. Both Carpenter and Zima
dealt with implied promises. Zima found that such an implied promised was inherently reliable if the trial court had jurisdiction over all of the charges. This Court is not confronted with whether to enforce an implied promise. Herein, the prosecutor made an express promise to Appellant regarding future charges. During the hearing on Appellant's motion to dismiss, the following colloquy took place when the municipal court prosecutor testified:
"And as a result of reviewing that tape, what was your discussion with [Appellant's trial counsel]?
"I talked to [counsel] who was representing [Appellant] at the time and I told her that she had a first degree misdemeanor right now. I would — if she would plead to that we would recommend a sentence of six months, that — I told her if she didn't do that I was going to look into or we are considering looking into refiling her charge as a felony, some sort of complicity or something on what Mr. Jones did, but I would not look into that if she would plead to the misdemeanor now for the maximum sentence which was six months.
"* * *
"So [Appellant] was aware that you were not going to pursue felony charges if she entered a plea in this case to a misdemeanor?
"I think the wording was, as I said, that we were going to look into having it re-signed as a felony, I wasn't going to do that if she pleads now, she was getting the maximum sentence and it's unusual that someone gets the maximum sentence right off the bat and that's why we were discussing why it would be appropriate for her to get that and imposed that.
"* * *
"Did you ever indicate — was there any indication that this was not — that there were further felony charges that could be brought?
"We never really discussed anything else. In the 16 years I've done this it's very, very unusual that we would — that the Summit County Prosecutor's Office would initiate charges on their own[.]"
Accordingly, the testimony of the municipal court prosecutor demonstrated that Appellant was expressly promised that no future felony charges would be sought against her if she pled to the current misdemeanor charges. As a result of that representation, Appellant pled to the charges with the knowledge that the City would recommend the maximum sentence for the charges.
 {¶ 32} In its argument, Appellee asserts that Appellant should have known that the municipal court prosecutor did not have the authority to control the disposition of felony charges. However, in the instant matter, the prosecutor did not attempt to dispose of pending felony charges. He promised that felony charges would not be initiated. Further, in his testimony, the prosecutor indicated that it was highly unusual for the County to pursue felony charges when the City had expressly declined to bring them.
 {¶ 33} In accord with Zima, I would find that Appellant met her burden of articulating the circumstances that make her belief reasonable that the plea was binding. The City expressly promised not to initiate felony charges with full knowledge of the facts surrounding the incident. The municipal court prosecutor candidly admitted that felony complicity charges were possible based upon the videotape, and as such he would recommend the maximum sentence for the misdemeanor and forego felony charges if Appellant would enter the plea and accept the maximum sentence. Neither was there any confusion about which victim was referenced in the charges under negotiation.
"So, just so we understand, there were two victims in this case; correct?
"Yes. There was a charge — she was charged for her actions based on a person who the owner or operator, manager of the pizza place, not the person who was assaulted."
The prosecutor then testified that the possible felony charges which he agreed not to seek dealt with a patron in the shop who was assaulted by Mr. Jones. Thus, the record is clear regarding the specific details of Appellant's plea.
 {¶ 34} In support of its argument, Appellee effectively seeks a bright line rule that a municipal court prosecutor may never bind the Common Pleas court because he or she lacks jurisdiction to control the disposition of felony cases. However, as theMcDonough court recognized, the jurisdiction of the municipal court and the common pleas court stem from the same organic law which created the general jurisdiction of an accused to be tried. Appellant willingly accepted the maximum sentence for her misdemeanor offenses in order to ensure that felony charges would not be brought against her. Appellant then served that sentence. The State now seeks to invoke a narrow deficiency in Appellant's plea agreement to avoid its enforcement. In the instant matter, the administration of justice requires that the felony charges against Appellant be dismissed.
 {¶ 35} A negotiated plea agreement between the prosecutor and the defendant is essentially a contract. State v. Whiteman,
11th Dist. No. 2001-P-0096, 2003-Ohio-2229, at ¶ 38. Accordingly, contract principles must be applied. In order for a principal to be bound by the acts of its agent under the guidelines of apparent authority, the Supreme Court of Ohio has stated that evidence must affirmatively show:
"(1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority."Consolidated Corp. v. BancOhio Natl. Bank (1991),61 Ohio St.3d 570, 576-577.
Under the specific facts presented herein, I would find that Appellant established that the municipal court prosecutor had the apparent authority to fully litigate the charges against her. As noted above, no felony charges were pending against Appellant when the plea was entered. Further, the municipal court prosecutor discussed the fact that he was permitted to re-sign the charges as a felony, but he would not do so if Appellant pled guilty. The municipal court prosecutor concluded that it was highly unusual for the County to pursue felony charges when the City had not filed them.
 {¶ 36} Based on these facts, the State held the municipal court prosecutor out to the public as having the authority to enter into such a plea agreement. Appellant, in good faith, believed that the prosecutor had the authority to enter into such an agreement. Appellant's good faith belief is amply demonstrated by her immediate agreement to a maximum sentence executed forthwith. As such, I would find that the State is bound by its promises to Appellant and I would dismiss the felony charge.