TIM McCORMACK, J.:
{¶ 1} Plaintiff-appellant, the state of Ohio ("the state") appeals from the trial court's dismissal with prejudice of its case against defendant-appellee Rufus Jackson ("Jackson"). For the reasons that follow, we affirm.
Procedural and Substantive History
{¶ 2} This case arises out of an incident that occurred on March 3, 2006. On that *149 date, Jackson shot Roy Moorer multiple times in the chest and left arm. As a result, Moorer was paralyzed from the waist down.
{¶ 3} On March 15, 2006, Jackson was indicted on two counts of felonious assault, both with one- and three-year firearm specifications, in Cuyahoga C.P. No. CR-06-478104-A.
{¶ 4} While Jackson was in jail pending resolution of that case, he was indicted in Cuyahoga C.P. No. CR-06-480135-A for assault on a peace officer and vandalism for an incident that had occurred in the Cuyahoga County Jail.
{¶ 5} Jackson initially pleaded not guilty to all charges. Subsequent negotiations resulted in a plea agreement that resolved both cases. On June 22, 2006, Jackson pleaded guilty to one count of felonious assault, together with the three-year firearm specification in CR-06-478104-A, as well as to an amended count of attempted assault in CR-06-480135-A. The remaining counts in both cases were dismissed.
{¶ 6} On July 13, 2006, the trial court sentenced Jackson to eight years on the felonious assault count, to be served consecutively to three years for the gun specification. The court also sentenced Jackson to a consecutive six-month term for attempted assault.
{¶ 7} On February 8, 2016, Moorer died. The autopsy report listed his cause of death as "acute bronchopneumonia" due to "decubitus ulcers with osteomyelitis and sepsis," "paraplegia with neurogenic bladder and end stage renal disease," and "multiple gunshot wounds of the trunk and left arm with spinal injuries."
{¶ 8} On June 7, 2016, a grand jury indicted Jackson in the underlying case, Cuyahoga C.P. No. CR-16-605802-A, on two counts of murder for Moorer's death, each with one- and three-year firearm specifications.
{¶ 9} On May 25, 2017, Jackson filed a motion to dismiss the indictment pursuant to State v. Carpenter , in which the Ohio Supreme Court held that when the state accepts a negotiated guilty plea to one offense, and the victim later dies due to injuries sustained from that offense, it cannot prosecute the defendant for murder unless it expressly reserved the right to do so. State v. Carpenter , 68 Ohio St.3d 59, 623 N.E.2d 66 (1993). The state filed a brief in opposition.
{¶ 10} On June 25, 2017, the trial court held a hearing on Jackson's motion to dismiss. The trial court granted Jackson's motion and dismissed the case with prejudice.
{¶ 11} The state timely appealed the dismissal, presenting three assignments of error for our review.
Law and Analysis
Assignment of Error No. 1
{¶ 12} In its first assignment of error, the state argues that the trial court erred in dismissing the indictment against Jackson. Specifically, the state argues that the trial court read an implied term of immunity from future prosecution into the 2006 plea agreement, despite an express disclaimer of any additional terms not stated on the record. The state alleges that the trial court further erred by placing the burden on the state to prove that Jackson did not subjectively believe this implied term to be part of the agreement. The state is essentially relying on contract principles to argue that the Ohio Supreme Court's holding in Carpenter was incorrect.
{¶ 13} Carpenter is premised on the idea that plea agreements are "an essential and necessary part of the administration *150 of justice." Carpenter , 68 Ohio St.3d 59, 623 N.E.2d 66, citing Santobello v. New York , 404 U.S. 257, 261, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). "The holding in Carpenter is essentially a synthesis of contract and criminal law in a particular factual setting." State v. Zima , 102 Ohio St.3d 61, 2004-Ohio-1807, 806 N.E.2d 542, ¶ 11. Plea bargains are contractual in nature and thus "subject to contract-law standards." State v. Dye , 127 Ohio St.3d 357, 2010-Ohio-5728, 939 N.E.2d 1217, citing Baker v. United States , 781 F.2d 85, 90 (6th Cir. 1986). Beyond their basis in contract law, though, plea agreements exist in a criminal context. Therefore, the plea phase of the criminal process " 'must be attended by safeguards to insure the defendant what is reasonably due in the circumstances.' " Carpenter at 60, 623 N.E.2d 66 quoting Santobello at 262, 92 S.Ct. 495.
{¶ 14} The state argues that because the 2006 plea agreement did not contain any terms containing an explicit reference to future prosecutions for the March 3, 2006 shooting, the trial court violated contract principles by reading an implied term of immunity into the plea agreement. However well-founded in contract law this argument may be, it is at odds with the Supreme Court's holding in Carpenter .
{¶ 15} The Ohio Supreme Court has unambiguously held that the state must "expressly reserve the right to file additional charges on the record at the time of the defendant's plea" if it wishes to indict a defendant for murder after the court has accepted a negotiated guilty plea to a lesser offense and the victim later dies of injuries sustained in the crime. Carpenter at 62, 623 N.E.2d 66. Requiring the state to reserve the right to initiate future prosecutions "places no unreasonable burden on prosecutors and ensures that defendants are fully aware of the consequences of their guilty pleas." Dye at 363, 939 N.E.2d 1217.
{¶ 16} The state further notes that Jackson responded "no" when the trial court asked him: "Did anyone make any threats or promises to get you to plead guilty here today, other than what has been stated in open court and on the record?"
{¶ 17} According to the state, this exchange precludes Jackson from relying on Carpenter , 68 Ohio St.3d 59, 623 N.E.2d 66, because he expressly disclaimed that there were any additional terms of the plea agreement. We disagree. The above exchange is a required part of a court's plea colloquy under Crim.R. 11 to determine that a defendant's plea is entered knowingly, intelligently, and voluntarily. The state's interpretation would render Carpenter inapplicable to most, if not all, guilty pleas. This would effectively render the Ohio Supreme Court's decision in Carpenter meaningless.
{¶ 18} Finally, the state asserts that it should not have been required to prove that Jackson did not believe that his guilty plea would end criminal prosecution based on the March 3, 2006 shooting. We disagree. Such an assertion asks this court to ignore both the constitutional requirement that a defendant understand the consequences of his guilty plea and Ohio's legal precedent. Therefore, the state's first assignment of error is without merit.
Assignment of Error No. 2
{¶ 19} In its second assignment of error, the state argues that the trial court erred in applying Carpenter here without any evidence in the record demonstrating that the victim's death from his or her injuries was foreseeable at the time of the plea.
{¶ 20} In support of this argument, the state interprets both Carpenter, 68 Ohio St.3d 59, 623 N.E.2d 66, and *151 Dye, 127 Ohio St.3d 357, 2010-Ohio-5728, 939 N.E.2d 1217, as requiring that the victim's death from his injuries be foreseeable at the time of the plea. In this case, according to the state, there was no evidence that the victim was likely to die from his injuries at the time of the plea. Despite the state's interpretation of the case law, neither Carpenter nor Dye establishes an evidentiary threshold a case must meet in order for the victim's death to be foreseeable, and we decline to create one here. The court in Carpenter commented that the state had actual knowledge of the victim's condition and "knew death was possible" at the time of the plea agreement. Carpenter at 61, 623 N.E.2d 66. We do not interpret this statement as imposing these preconditions in order for the holding in Carpenter to apply. Even if the requirement of Carpenter was dependent on a factual assessment of the foreseeability of the victim's death, we do not agree that it was not at all foreseeable that the victim here would die from his injuries. In this case, Moorer suffered grave injuries, sustaining multiple gunshot wounds that resulted in paralysis. Like the victim in Dye , Moorer died as a result of complications from his paralysis. Because we find no meaningful distinction between this case and Carpenter or Dye , the state's second assignment of error is without merit.
Assignment of Error No. 3
{¶ 21} In its third and final assignment of error, the state argues that if the 2016 indictment did breach the terms of Jackson's plea agreement, the trial court erred by failing to exercise discretion to choose between ordering specific performance of the terms of the plea and allowing the defendant to withdraw his plea. The state's argument essentially asks this court to abandon the precedent established in Carpenter and Dye , and we again decline to do so.
{¶ 22} The state cites several cases for the proposition that when the state breaches a plea agreement, the remedy is either specific performance of the plea agreement or allowing the defendant to withdraw his plea. We need not dispute the reasoning underlying this proposition, because we find it inapplicable to this case.
{¶ 23} Here, unlike the cases cited by the state, the state's breach of the 2006 plea agreement took the form of a separate indictment arising out of the shooting of Moorer. The state alleges that allowing Jackson to withdraw his plea is the "fairer" option in this case. We disagree. Jackson has served 11 years in prison for felonious assault, pursuant to the terms of his 2006 plea agreement. Allowing him the opportunity to vacate his plea now would do nothing to remedy the state's breach.
{¶ 24} Further, the state's arguments against specific performance as a remedy are merely a reiteration of the arguments from its first assignment of error, and we therefore decline to address them again here.
{¶ 25} Because we find no merit to the state's assignments of error, we affirm the trial court's decision to dismiss the indictment against Jackson.
EILEEN A. GALLAGHER, A.J., and SEAN C. GALLAGHER, J., CONCUR